### S. C. Thomson, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 91308.   Promulgated June 7, 1939.

*E. I. Sproull, C. P. A.*, for the petitioner.
*James C. Maddox, Esq.*, for the respondent.

#### OPINION.

Murdock: The Commissioner determined a deficiency of $4,641.02 in the income tax of the petitioner for the calendar year 1934. The only issue for decision by the Board is whether a loss of $24,625 is a capital loss, as determined by the Commissioner, or whether it was deductible in 1934 as a bad debt. The Board adopts as its findings of fact the stipulation filed by the parties.

The petitioner purchased $25,000 face amount of 20-year, 6 percent sinking fund, gold debentures of the New York United Hotels, Inc., maturing February 1, 1947. He purchased the bonds in May 1927 at a cost of $24,750. The bonds were subject to redemption by the debtor at any time after notice of 30 days, but if they were redeemed before maturity, they had to be redeemed at a premium.

The debtor encountered financial difficulties beginning in 1931 and the bond holders at that time waived a portion of the interest on the bonds. Ancillary receivers were appointed by a Federal court on December 15, 1933, at which time a plan to reorganize the debtor corporation was submitted to the court. The plan proposed a sale of the assets of the corporation to a new corporation and permitted the debenture holders to purchase for cash debentures to be issued by the new corporation upon certain terms. A supplemental plan was submitted to the court in February 1934, making minor changes in the original plan. The court, on March 8, 1934, entered an order approving the plan, but under that plan there was no provision for debenture holders who did not participate in the plan of reorganization. The court entered its final order on May 22, 1934, under which the receivers were directed, *inter alia*, to pay to debenture holders who would surrender their debentures with all coupons attached before a fixed time, $5 for each $1,000 face amount. The petitioner received a written notice pursuant to the order of the court of May 22, 1934, which stated that the debtor corporation's assets had been sold and that he was entitled to receive $5 for each $1,000 face amount of his debentures upon surrender of the debentures, with all interest coupons attached,

on or before August 20, 1934. Payment of $5 was to be "in full payment and settlement of said debentures." The petitioner surrendered his debentures on June 22, 1934, and received $125 in cash for them.

The Commissioner, in determining the deficiency, allowed the deduction of losses from sales or exchanges of capital assets arising from transactions, other than the one involved in these bonds, in an amount which exceeded the gains from such sales or exchanges by at least $2,000.

Section 117 (d) of the Revenue Act of 1934 provides that losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges. Thus, if the Commissioner was correct in determining that the petitioner's loss from the disposition of the bonds was a capital loss, the loss will not benefit the petitioner for income tax purposes. The petitioner, therefore, seeks to have this loss allowed as a bad debt under section 23 (k). The petitioner kept no books, but made his return upon a cash basis and claimed the loss in question as a bad debt on his return for 1934. Bonds are evidences of debt and such debts may give rise to a deduction under section 23 (k). *Samuel Bird*, 4 B. T. A. 259; *Merrill Trust Co.*, 21 B. T. A. 1395; *Carl P. Dennett*, 30 B. T. A. 49; *Commonwealth Federal Savings Bank* v. *Lucas*, 41 Fed. (2d) 111; *Kitselman* v. *Commissioner*, 89 Fed. (2d) 458; certiorari denied, 302 U. S. 709; *Pacific National Bank of Seattle* v. *Commissioner*, 91 Fed. (2d) 103. The Commissioner contends, however, that section 117 (f) is controlling. That provision, which appeared for the first time in the Revenue Act of 1934, is as follows:

SEC. 117. CAPITAL GAINS AND LOSSES.

\*　　\*　　\*　　\*　　\*　　\*　　\*

(f) RETIREMENT OF BONDS, ETC.—For the purposes of this title, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor.

The petitioner argues that the provision is not applicable because the word "retirement" was intended to mean redemption at maturity, or at some earlier time, in accordance with the terms of the debentures, and was not intended to include such a forced surrender of the bonds as occurred in this case for a nominal amount in obvious violation of the redemption provisions of the bonds.

The word "retirement" is not defined in the statute. It is susceptible of various meanings. Among the meanings given in Webster's New International Dictionary are these: "To withdraw from circulation or from the market, to take up or pay, as to retire bonds, or retire a note." The same authority defines "redeem" as

meaning "to pay back, to recover the obligation of, or to fulfill as a promise." No case has come to our attention where a court has considered the possible distinction, from the standpoint of retirement, between a forced surrender of bonds for an amount less than that provided in the debentures, as opposed to a redemption of bonds for full value in accordance with the provisions of the bonds governing redemption. Although the provisions of section 117 (f) clearly apply where bonds have been retired in accordance with their redemption provisions (cf. *Fairbanks* v. *United States*, 306 U. S. 436, there may be room for doubt as to whether the provisions apply when bondholders are forced to surrender their bonds for less than the redemption figure.

The legislative history of the provision has been examined in an effort to discover the intent of Congress. The capital gain and loss provisions first appeared in the Revenue Act of 1921. A capital gain or loss was defined in that statute, and also in later statutes, as the gain or loss resulting from the "sale or exchange" of capital assets. The question of whether the redemption of a capital asset bond was a sale or exchange had arisen. There are decisions holding that it is not a sale or exchange. *Fairbanks* v. *United States, supra; Arthur E. Braun, Trustee*, 29 B. T. A. 1161; *John H. Watson, Jr.*, 27 B. T. A. 463. The effect of such holdings in the case of a loss might be favorable to the Commissioner, but the effect in the case of a gain might be favorable to the taxpayer. The first suggestions to Congress for eliminating uncertainty on this subject were presented in the hearings before the Committee on Ways and Means while it was considering the Revenue Bill of 1928. Recommendations were made to that committee that capital gain and loss in the Revenue Bill of 1928 should be defined as including any gain or loss resulting from "redemption or retirement of corporate securities." A suggestion from another source was that the term "sale" should be defined to include all transactions resulting in taxable gain or loss. The purpose was to avoid confusion and prevent litigation. A brief submitted to the Finance Committee during the hearings on the Revenue Bill of 1928 also recommended that the capital gain and loss provisions be clarified to show that gain or loss from the "redemption or retirement of corporate securities constitutes 'capital gain'." The argument was that if corporate securities had been held for more than two years, the tax result should be the same whether they were sold, retired, or redeemed. Congress did not adopt the suggestions for the purpose of the Revenue Act of 1928.

This same subject was brought to the attention of the Committee on Ways and Means considering the Revenue Bill of 1934, and again the contention was made that the question ought to be settled by a clarifying provision. The suggestion was that capital gain or loss be de-

fined as resulting from the "sale, exchange, or redemption of capital assets." The only reference to this subject in the Committee reports is the following from the report of the Ways and Means Committee: "Subsection (f) provides that amounts received upon the retirement of corporate bonds and similar evidences of indebtedness shall be considered as amounts received in exchange therefor." Congress has not disclosed why it did not use the suggested word "redemption" but selected instead the word "retirement."

The word "retirement" as applied to evidences of indebtedness has a somewhat broader meaning than the word "redemption." Retirement is generally understood as meaning to withdraw from circulation not necessarily in accordance with the redemption provisions of the bonds, whereas redemption is generally understood to mean a retirement in fulfillment of or in accordance with the provisions for redemption contained in the indenture. Thus, the selection by Congress of the word "retirement" and the rejection of the word "redemption" would seem to indicate an intent on the part of Congress to give breadth to subsection (f). The suggestions to Congress for a change were prompted by a desire on the part of the Bar for an end to uncertainty and the resulting litigation, and Congress, in enacting the legislation, was apparently attempting to bring about the desired result. That desired result could be best accomplished by including in capital gains and losses, gains and losses from all transactions in bonds giving rise to taxable gain or loss. It seems reasonable to believe that Congress intended the word "retirement" to have its broadest meaning. An inference might be drawn from the evidence in the present case that the bondholders had lost all of their equity in the property of the debtor and the $5 was given to them as a sop. If that was not the situation, another inference would be that they were practically forced to surrender their bonds. Certainly, they did not have much choice in the matter. An argument, not without force, is that the statute should not be interpreted as applying in case of a forced surrender or in case of a mere nominal payment in discharge of the bonds. However, it would be extremely difficult to draw any satisfactory line for the purposes of section 117 (f) short of applying the section to all retirements. The bonds in the present case were retired in the sense that they were withdrawn from circulation, taken up on behalf of the debtor, and discharged as an obligation. We hold that there was a retirement of these bonds within the meaning of that word as used by Congress in section 117 (f). The question of ascertainment of worthlessness of the debt and whether that ascertainment should have been made in an earlier year are questions which need not be considered in view of this holding.

*Decision will be entered for the respondent.*